**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ONDIMAR TRANSPORTES MARITIMOS, LTDA and IBAIZABAL MANAGEMENT SERVICES, SL, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. H-07-1223 |
| BEATTY STREET PROPERTIES, INC., and M/V BAYOU CITY, | § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a maritime case involving a collision between a vessel and a dock at the Port of Texas City, Texas. The Port demanded that the vessel operator and manager, Ondimar Transportes Maritimos, Ltda and Ibaizabal Management Services, SL (together, "Ondimar"), pay $133,608.46 for damage to the dock. Ondimar settled with the Port by paying the full amount. Ondimar then sued Beatty Street Properties, Inc., the owner and operator of a vessel that was at an adjacent dock when the incident occurred. In this suit, Ondimar alleges that Beatty contributed to causing the collision. Ondimar seeks to recover the money it paid the Port to settle its claim for damage to the dock and to recover for damage to the vessel's hull. Beatty has moved to dismiss or for summary judgment, asserting that as a matter of law, Ondimar is barred from recovering the money it paid the Port and that Ondimar failed to produce evidence of damage to the vessel. (Docket Entry No. 5). Ondimar has responded, and Beatty has replied. (Docket Entries No. 6, 7).

Based on a careful review of the motion, response, and reply, the parties' submissions, and the applicable law, this court grants Beatty's motion for summary judgment as to Ondimar's claims for indemnity and contribution and Ondimar's negligence claim based on its assignment from the Port, but denies Beatty's motion for summary judgment as to Ondimar's claims based on damages to the vessel hull. The reasons are set out below.

## I.     Background

The collision between the Ondimar vessel, the *M/T Monte Toledo*, and a dock at the Port of Texas City occurred on April 12, 2005, while the *Monte Toledo* was in the process of docking. In this suit, Ondimar asserts that the collision resulted from the inability of the *Monte Toledo*'s pilots to communicate via VHF radio with the pilots on the attending tugs. That inability, according to Ondimar, resulted from another vessel "keying" on the VHF channel reserved for the pilots aboard the *Monte Toledo*. The other vessel, the *M/V Bayou City,* was owned and operated by Beatty. In this suit, Beatty disputes that its vessel played any role in the collision between Ondimar's vessel and the dock. Beatty asserts that even if there are fact issues as to whether its vessel contributed to the collision between the Ondimar vessel and the Port's dock, Ondimar cannot recover the money it paid the Port in settlement.

The Port of Texas City demanded that Ondimar pay $133,608 for damage to the dock's fender system caused by the collision. The Port made the demand under U.S. Customs Port Code 5306, Circular No. 4-H, Tariff Item 292, which requires a user that damages Port facilities to pay the Port all costs arising from such damage, including lost revenues. Failure to pay entitles the Port to deny the user access and services. In January 2006, Ondimar notified Beatty of its intent to hold Beatty liable for the $133,608 damages

asserted by the Port. After a further exchange of documents and information, counsel for Ondimar told counsel for Beatty that the Port's damages claim "appears to be solid and does not include any administrative burden or overhead." (Docket Entry No. 5, Ex. D). Counsel for Ondimar stated that he was instructed either to pay the claim and obtain an assignment from the Port or to have Beatty deal directly with the Port and hold Ondimar harmless. Ondimar did not ask Beatty to approve Ondimar's payment to the Port or to assume Ondimar's defense.

On November 28, 2006, Ondimar paid the Port the $133,608.46 demanded to settle the Port's claim. The settlement agreement included a provision assigning to Ondimar the Port's common-law claims against third parties arising from the incident. The agreement specifically authorized Ondimar to pursue claims against the *M/V Bayou City* and its owners and operators. The Port released Ondimar from any liability under Tariff 292 and agreed to allow the Ondimar vessel, the *M/V Monte Toledo,* to continue to use the Port. The settlement agreement did not release any other party.

Ondimar filed this suit against Beatty after unsuccessfully attempting settlement. Ondimar asserts three claims:

- a contribution and indemnity claim against Beatty for the $133,608.46 Ondimar paid to the Port;

- a negligence claim against Beatty for the $133,608.46 Ondimar paid to the Port, by virtue of the Port's assignment of its claim to Ondimar in the settlement agreement; and

- a negligence claim against Beatty for the damage to the M/V Monte Toledo's

hull as a result of the collision.

Beatty moves to dismiss or for summary judgment. The primary argument is directed to Ondimar's claim for contribution and/or indemnity. Beatty argues that this claim is barred by the cases establishing and applying the rule of proportionate liability among joint tortfeasors in maritime cases. Beatty relies on *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), and *Murphy v. Florida Keys Elec. Coop.*, 329 F.3d 1311 (11th Cir. 2003), to argue that Ondimar's settlement with the Port precludes a claim for contribution or indemnity for the settlement amount. Ondimar responds by arguing that these authorities only apply to cases in which a factfinder adjudicates liability and apportions fault. Ondimar also argues that these authorities do not apply to settlements that are "compelled" by external factors such as the Tariff. Ondimar's argument is that such "compelled" settlements are inconsistent with the presumption underlying the proportionate liability rule that the settling party is only paying for its share of the total damages.

Beatty also moves to dismiss or for summary judgment as to Ondimar's negligence claim. Beatty argues that the Port's assignment to Ondimar of the property damage claim is invalid under admiralty law; Ondimar asserts that such an assignment is valid.

Beatty finally seeks dismissal of Ondimar's negligence claim for damages to the *M/V Monte Toledo's* hull, as opposed to a claim for damages to the Port's dock, on the basis that Ondimar has failed to present evidence of such damages.

These grounds for liability, and the arguments raised by the motion and response, are addressed below.

**II.     The Legal Standard**

Because the parties have asked the court to consider materials beyond the pleadings and attachments, the motion is appropriately considered as one seeking summary judgment. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln General Ins. Co. v. Reyna*, 401 F.3d (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings.

The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Young v. ExxonMobil Corp.*, 155 Fed. Appx. 798, 800 (5th Cir. 2005).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Young*, 155 Fed. Appx. at 800. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (quoting *Celotex*, 477 U.S. at 322).

### III.     Ondimar's Claim for Contribution and Indemnity

Under general maritime law, an alleged tortfeasor may seek contribution, indemnity, or apportionment from one who may be comparatively negligent or a joint tortfeasor. Maritime contribution law provides for apportionment of joint tortfeasors' liability according to principles of comparative fault. In *McDermott Inc. v. AmClyde*, 511 U.S. 202 (1994), the Supreme Court held that when one of several defendants settles its maritime dispute with the plaintiff, the liability of remaining, nonsettling defendants should be calculated by allocating their proportionate responsibility for the plaintiff's injuries. In *Boca Grande Club, Inc. v. Florida Power & Light Company*, 511 U.S. 222 (1994), decided the same day, the Court held

that under *McDermott's* proportionate share rule, "actions for contribution against settling defendants are neither necessary nor permitted." *Id*. at 222.

*McDermott* was an admiralty case involving a construction accident in the Gulf of Mexico. The plaintiff, McDermott, Inc., purchased a 5,000-ton crane from AmClyde and attempted to use it to move an oil and gas production platform from a barge to a steel base. *Id*. at 204–05. River Don Casting, Ltd. provided a hook and three other companies provided steel slings. A prong on the crane's main hook broke and massive damage to the crane and platform resulted. There were several possibilities as to the cause of the accident: McDermott's negligent operation of the crane; AmClyde's faulty design or construction of the crane; a defect in River Don's hook; or a defect in one or more of the steel slings. Before trial, McDermott settled with the three sling defendants, for $1 million, but AmClyde and River Don did not settle. The claims against AmClyde and River Don went to trial. A jury found in favor of McDermott, setting McDermott's losses at $2.1 million and allocating responsibility as follows: 32 percent to AmClyde, 38 percent to River Don, and 30 percent jointly to McDermott and the sling defendants. *Id*. at 204, 206. Judgment was entered against AmClyde for $672,000 (32 percent of $2.1 million) and against River Don for $798,000 (38 percent of $2.1 million). *Id*. at 206. AmClyde and River Don argued that because the amounts awarded against them, together with the $1 million in settlement proceeds, exceeded McDermott's damages as found by the jury, the amounts awarded against them should be reduced to avoid a double recovery. *Id*. The Supreme Court described the issue as "how a settlement with less than all of the defendants in an admiralty case should affect the liability of nonsettling defendants." *Id*. at 207. The Court observed that "[i]t is

generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement," but that there was disagreement "about how that credit should be determined." *Id*. at 208. The Court adopted the "proportionate share approach," under which money paid by a settling defendant extinguishes any claim that the injured party has against the released tortfeasor and also diminishes the claim that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor. The Supreme Court stated that "[u]nder [the proportionate share] approach, *no suits for contribution are permitted,* nor are they necessary, because the non-settling defendants pay no more than their share of the judgment." *Id.* at 209.

The proportionate share rule "does not make a litigating defendant's liability dependent on the amount of a settlement negotiated by others without regard to its interests." *Id*. at 220; *accord Becker v. Poling Transp. Corp*., 356 F.3d 381, 386 (2d Cir. 2004) ("*AmClyde* . . . holds that, when two or more parties have contributed to a plaintiff's injury, liability must be allocated proportionately and a settlement by one tortfeasor does not change the exposure of a non-settling joint tortfeasor"). Because of this, the Court concluded in *McDermott* that the proportionate share approach was the fairest to all parties. If a plaintiff negotiates a generous settlement, other nonsettling defendants will not have their liability reduced; if the plaintiff negotiates a thin settlement, the nonsettling defendants will not have to assume a disproportionate share of the liability. The *McDermott* court recognized that under this approach, no suits for contribution may be brought by the nonsettling tortfeasors against the settling defendants, because the nonsettling defendants pay no more than their

share of any settlement or judgment. Under *McDermott* and *Boca Grande*, nonsettling tortfeasors have no right to seek contribution against settling parties. Courts have applied this rule to preclude contribution suits by settling tortfeasors against nonsettling tortfeasors as well.

The leading appellate case applying *McDermott* is *Murphy v. Florida Keys Electric Cooperative Association, Inc.*, 329 F.3d 1311, 1314 (11th Cir. 2003). The Eleventh Circuit phrased the issue in that case as whether a defendant in an admiralty tort action who settled with the plaintiff without obtaining a release from liability for other potential tortfeasors can make a contribution claim against those tortfeasors to reduce the amount that the defendant paid to settle its own liability. After an extensive historical review of the Eleventh Circuit's decisions on the issue of contribution among joint tortfeasors, the court held that such a contribution claim could not be brought. The court reasoned that under *McDermott*, a settling tort defendant cannot bring an action for contribution against a nonsettling defendant who was not released from liability to the plaintiff under the settlement agreement. The *Murphy* court found that *McDermott's* prohibition against contribution from a settling party did not preclude a contribution suit against a tortfeasor who was released by a settlement even though not a party to it. "A release is not the same as a settlement and a released party is not a settling party within the meaning of *McDermott*, which does not purport to eliminate altogether the 'well-established maritime rule allowing contribution between joint tortfeasors.'" *Id.* at 1318. The *Murphy* court concluded that this was consistent with the "essential tenet of [the proportionate share] approach," that "when a tortfeasor settles a claim against it, but does not obtain a release for the other tortfeasors, it has settled only its

proportionate share of the total damages, no more and no less. It follows that what remains, and all that remains, to be calculated is the compensation the nonsettling tortfeasors owe the plaintiff. Once that amount is determined at trial, the nonsettling tortfeasors are liable only to the plaintiff and only to the extent the trial verdict determines. Their trial-determined liability is in no way affected by a settling defendant's negotiated liability." *Id.* at 1314.

Under these authorities, a settling defendant who has obtained a release for its liability and the liability of the nonsettling defendant may file a contribution claim against the released but nonsettling party; a settling defendant who has not obtained a release for the liability of a nonsettling party may not file a contribution claim against that party. *Murphy*, 329 F.3d at 1315; *McDermott*, 511 U.S. at 209; *see also N. and S. Am. Shipping v. United States*, 352 F. Supp. 2d 734, 746–47 (E.D. La.2005) (because "[t]he settling defendant is assumed to settle for its proportionate share . . . there should be no need or reason to seek contribution or indemnity from the non-settling defendant" who is not released from liability and therefore remains liable for its proportionate share of damages); *S.J. Gargrave Syndicate v. Rolls-Royce Commercial Marine Inc.*, No. Civ. A. 04-2358, 2006 WL 83100, at *1 (E.D. La. Jan. 12, 2006) (allowing contribution from a nonsettling tortfeasor that was not released would make that tortfeasor contribute funds to discharge the settling party's liability without reducing its own exposure).

Applying these principles leads to the conclusion that Ondimar cannot maintain an action for contribution against Beatty. Only Ondimar settled with the Port and the settlement did not release Beatty. Beatty may not be required to contribute to the payment discharging Ondimar's liability, when such a payment would not reduce any liability that Beatty might

have to the Port.

Ondimar argues that these principles do not apply unless there is an adjudication by a factfinder of the defendants' proportionate liability.  *McDermott* is not so limited and the cases applying *McDermott* do not support this argument.  Rather, the cases apply *McDermott* when, as here, a settling defendant has asserted a claim against a nonsettling defendant for contribution, before a factfinder has allocated liability among the defendants.  *See, e.g.*, *N. and S. Am. Shipping*, 352 F. Supp. 2d at 746-47;  *S.J. Gargrave Syndicate*, 2006 WL 83100, *1.  Indeed, by its contribution action against Beatty, Ondimar is asking for a factfinder to adjudicate Beatty's proportionate liability for the collision between Ondimar's vessel and the Port's dock.

Ondimar also argues that these principles and the release requirement do not apply if the settlement paid the original plaintiff's total claim in full.  Ondimar argues that full payment removes the presumption that the settling defendant paid only its proportionate share of liability.  This argument is inconsistent with the recognition in *McDermott* and subsequent cases that the amount of the settling tortfeasor's payment does not affect the determination of the nonsettling tortfeasor's liability.  Under the proportionate share approach, it makes no difference to the nonsettling parties sued by the settling party how much the settling party should have paid the plaintiff.  As the court explained in *Murphy*, "[w]hen [the settling party] and the [plaintiffs] negotiated their settlement, each assumed the risk of misjudging what a trial would determine to be the amount of damage the [plaintiffs] had suffered and the proportion of the liability for that damage that should be attributed to the [settling party] instead of the [third-party defendants]. The [third-party defendants], who

were not a party to the settlement, assumed no such risk, preferring instead to risk whatever the [plaintiffs] might obtain against them, perhaps discounted by the hope or expectation that the [plaintiffs] would not sue them. If the [plaintiffs] got more from settling with [the settling party] than they would have recovered from taking [the settling party] to trial, that does not lessen the potential liability of the [third-party defendants]. Likewise, if the [plaintiffs] got less from [the settling party] than they would have recovered by trial, that does not increase the potential liability of the [third-party defendants]." *Murphy*, 329 F.3d at 1315 (internal citations omitted). Ondimar's argument appears to rest on the assumption that the one-satisfaction rule continues to apply after *McDermott*. The Supreme Court in *McDermott* declined to apply the one-satisfaction rule, noting that the law contained no rigid rule against overcompensation and that any excess recovery could result from tortfeasors making an unwise settlement, for which the plaintiff should not be penalized. The Court recognized "that settlements frequently result in the plaintiff's getting more than he would have been entitled to at trial." The fact that a plaintiff made a favorable settlement with one defendant gives the other defendants no claim to pay less than their proportionate share of the total loss. *McDermott*, 511 U.S. at 219–20.

   Ondimar cites *S.J. Gargrave Syndicate*, 2006 WL 83100, to support the argument that if a defendant settles by paying the full amount of the liability, that is evidence that it paid more than its proportionate share. In *Gargrave*, however, the court emphasized the fact that the settlement between the defendant and the plaintiff did not release the nonsettling tortfeasor. *Gargrave* did not hold that evidence that the settling party had paid the full amount the plaintiff demanded from that party would permit the settling party to seek

contribution or indemnity from the nonsettling party.

The courts have applied the *McDermott* rule to claims for common-law indemnity as well as contribution. *See, e.g.*, *Cliffe v. Sportsman's Cove, Inc*. No. Civ. A 03-1705, 2003 WL 22415997, at *1 -4 (E.D. La. Oct. 21, 2003); *In re D.N.H. Towing Co.*, No. CIV. A. 97-1104, 1998 WL 51835, at *2 (E.D. La. Feb. 5, 1998). Even apart from the *McDermott* rule, Ondimar has no common-law claim for indemnity against Beatty. The availability of common law indemnity under maritime law is limited. "Indemnity between liable maritime tortfeasors is now available only 'where proportionate degrees of fault cannot be measured and determined on a rational basis.'" *Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 833 (5th Cir. 1992) (quoting *United States v. Reliable Transfer Co.,* 421 U.S. 397, 405 (1975)). In *Loose v. Offshore Navigation, Inc.,* 670 F.2d 493, 501 (5th Cir.1982), the court recognized that comparative fault displaced the traditional concept of tort immunity. Since *Loose,* the Fifth Circuit has significantly limited tort indemnity under maritime law. *Hardy,* 649 F.2d at 833. The remaining viable indemnity theories include: (1) a vicariously liable or nonnegligent tortfeasor is entitled to indemnity from a codebtor guilty of actual fault ( *see Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA,* 761 F.2d 229, 236 (5th Cir.1985)); (2) the user of a defective product that injured the plaintiff is entitled to recover indemnity from the manufacturer of the product (*id.*); (3) a vessel can recover indemnity from a stevedore who breaches a contractually implied warranty of workmanlike performance (*see Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124 (1956)); and (4) express contractual indemnity agreements (*see American Stevedores v. Porello,* 330 U.S. 446 (1947)). None of these grounds applies here.

Ondimar's claim for contribution and/or indemnity is dismissed.

## IV.    Ondimar's Negligence Claim Based on the Assignment from the Port of Texas City

Beatty also moves for summary dismissal of Ondimar's claim to recover the amount it paid the Port in settlement based on the assignment of the Port's claim to Ondimar. In the settlement agreement, Ondimar obtained an assignment from the Port of Texas City of its claims against third parties arising from the collision of the Ondimar vessel and the Port dock. Beatty argues that the assignment is invalid and unenforceable.

There is scant authority on this issue. Federal district courts have applied maritime law to hold that for public policy reasons, an assignment of a personal injury or wrongful death claim is invalid in a maritime tort case. *Boney v. Interocean Ugland Mgmt. Corp.*, 97 F. Supp. 2d 799 (S.D. Tex. 2000); *Casino Cruises Inv. Co., L.C. v. Ravens Mfg. Co.*, 60 F. Supp. 2d 1285, 1288 (M.D. Fla. 1999). The parties have not cited maritime tort cases analyzing an injured party's assignment of its property-damage claim to a settling party to permit the settling party to assert that claim against a nonsettling joint tortfeasor. This court has not found such authority. The absence of case law involving assignments of property damage claims for the purpose of enabling a settling joint tortfeasor to obtain reimbursement for some or all of amounts from a nonsettling joint tortfeasor supports Beatty's argument that such an assignment is precluded by *McDermott's* proportionate liability approach. In Texas, which also follows a proportionate liability rule, such assignments are invalid because they attempt to preserve contribution rights by a settling tortfeasor from a nonsettling tortfeasor. The Texas Supreme Court has held that allowing a settling tortfeasor to obtain by assignment

what could not be obtained through a suit for contribution or indemnity would undermine the finality of settlements achieved through the proportionate liability rule and would not "result in any significant savings of time or resources" because "the settling defendant's unusual posture as surrogate plaintiff" would lead to additional litigation, jury confusion, and possible prejudice to the remaining tortfeasors. *Jackson v. Freightliner Corp.*, 938 F.2d 40, 41 (5th Cir. 1991). Similarly, under general maritime law, an assignment from a party whose property was damaged in a maritime tort to a settling joint tortfeasor, to permit that tortfeasor to sue a nonsettling joint tortfeasor, is inconsistent with *McDermott* and related cases applying the proportionate liability rule. Beatty's motion for summary judgment as to Ondimar's negligence claim based on its assignment from the Port is granted.

## V.     Ondimar's Negligence Claim for Damages to its Vessel

Beatty moved for summary judgment on all of Ondimar's claims. In the original motion, however, Beatty did not specifically seek summary judgment dismissing the negligence claim Ondimar asserted to recover damages to the *Monte Toledo*'s hull as opposed to the Port's dock. Instead, Beatty sought summary judgment based on the settlement-bar rule and the unenforceability of the assignment. These grounds only applied to Ondimar's effort to recover the settlement it paid for the damage to the Port's dock. In its response to Beatty's summary judgment motion, Ondimar fully addressed the grounds that Beatty had raised in its motion. Ondimar pointed out that the negligence claim for damage to its vessel would survive the settlement-bar rule because this claim was not covered by the settlement between Ondimar and the Port. *See, e.g.*, *In re Complaint of Liberty Seafood, Inc.*, 38 F.3d 755 (5th Cir. 1994). In the reply to Ondimar's response, Beatty argues that the

negligence claim for damage to the vessel should also be dismissed because Ondimar presented no summary judgment evidence of such damage. Beatty's argument is misplaced. Given the bases for Beatty's summary judgment motion, Ondimar was not required to present such evidence to avoid dismissal of its claim for damages to the vessel's hull. Beatty's motion for summary judgment on Ondimar's negligence claim for damage to its own vessel is denied.

## V.  Conclusion

Beatty's motion for summary judgment as to Ondimar's claim for contribution and indemnity and for negligence based on an assignment from the Port is granted. Beatty's motion for summary judgment as to Ondimar's claim for negligence based on damages to the *Monte Toledo* is denied.

SIGNED on January 2, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge